ENOCH BENNER *vs.* THE EQUITABLE SAFETY INSURANCE COMPANY.

Under a charter party of a vessel for an entire voyage to ports in the Mediterranean and back to the United States, for a gross sum, "and all foreign port charges, pilotages and lighterages, and to furnish sums abroad for the ordinary disbursements of the vessel, not to exceed five hundred dollars, said advance to be furnished at cost and free of commission, charter payable on discharge of cargo at port in the United States," if the vessel is lost after the advance of the five hundred dollars and before reaching the United States, the owner is liable to a claim for reimbursement in favor of the shipper, and may recover on a policy by which the freight is insured, without deduction on account of the advance.

CONTRACT upon a policy of insurance issued by the defendants by which they insured the plaintiff in the sum of $2500 on the charter of the bark Wyandotte.

The following facts were agreed in the superior court:   At the time when the policy was issued, the Wyandotte was under the charter referred to, "for a voyage from Boston to New York,

thence to Constantinople, Smyrna, a safe port in Sicily, and back to a safe port in the United States north of Cape Hatteras," the charterer agreeing to pay " for the whole capacity of said vessel for the entire voyage five thousand dollars, and all foreign port charges, pilotages and lighterages, and to furnish sufficient sums abroad for the ordinary disbursements of the vessel, not to exceed five hundred dollars · Said advance to be furnished at cost and free of commission. Charter payable on discharge of cargo at port in the United States." The plaintiff had an insurable interest in the freight to the amount insured. Five hundred dollars were furnished to the master abroad, pursuant to the provisions of the charter party. The vessel was totally lost before the voyage was completed. Another insurance company insured $2500 on the same freight. The defendants have paid $1800 on account of the loss. It was further agreed, if competent, that the plaintiff has never paid back to the charterers the amount furnished to the master abroad, nor have they ever formally demanded the same of him. And the question submitted was, whether on these facts the defendants are entitled to deduct from the amount remaining unpaid $250, being one half of the sum furnished to the master abroad.

On these facts, judgment was rendered for the full amount of the balance due upon the policy, without deduction ; and the defendants appealed to this court.

*A. H. Fiske,* for the defendants. The amount furnished to the master was a payment. Abbott on Shipping, 406, 408. *De Silvale* v. *Kendall,* 4 M. & S. 37. *Manfield* v. *Maitland,* 4 B. & Ald. 582. *Jackson* v. *Isaacs,* 3 Hurlst. & Norm. 405. *Hicks* v. *Shield,* 7 El. & Bl. 633. *Gibbon* v. *Mendez,* 2 B. & Ald. 17, 25. *McGilvery* v. *Capen,* 7 Gray, 525.

*J. C. Dodge,* for the plaintiff, cited *Towle* v. *Kettell,* 5 Cush. 18, and cases cited; *Brown* v. *Harris,* 2 Gray, 359 ; *Griggs* v. *Austin,* 3 Pick. 20 ; *Watson* v. *Duykinck,* 3 Johns. 335 ; *Phelps* v. *Williamson,* 5 Sandf. 578 ; *Cope* v. *Dodd,* 13 Penn. State R. 33 ; *The Zenobia,* Abbott, 80 ; *Pitman* v. *Hooper,* 3 Sumner, 66 ; *Reina* v. *Cross,* 6 California, 29 ; *Atwell* v. *Miller,* 11 Maryland, 360 ; *Manfield* v. *Maitland,* 4 B. & Ald. 522. 3 Kent Com. (6th ed.) 227.

BIGELOW, C. J. The general rule of law is, that freight paid in advance is not earned, unless the voyage for which it is stipulated to be paid is fully performed, and the owner of the vessel is liable to a claim for reimbursement in favor of the shipper, if for any fault not imputable to the latter the contract of affreightment is not fulfilled. *Minturn* v. *Warren Ins. Co.* 2 Allen, 86, and cases cited. This rule may be varied or annulled by an express agreement in the charter party or bill of lading, by which it is provided that money paid in advance on account of the freight shall be deemed to be absolutely due to the owner at the time of its prepayment, and not in any degree dependent on the contingency of the performance of the contemplated voyage and the entire fulfilment of the contract of carriage. But as such a stipulation is intended to control the usual rule of law applicable to such contracts, and to substitute in its place a positive agreement of the parties, it is necessary to express it in terms so clear and unambiguous as to leave no doubt that such was the intention in framing the contract of affreightment. Otherwise the general rule of law must prevail. Thus in the leading English case on this subject, *De Silvale* v. *Kendall,* 4 M. & S. 37, the court construed the contract of the parties to be that the freight paid before the completion of the entire voyage was absolutely due as compensation for carriage of the outward cargo, so that, as was said by Lord Tenterden in the subsequent case of *Manfield* v. *Maitland,* 4 B. & Ald. 582, the instrument was deemed to be " studiously framed to make the freighter lose the money advanced by him, unless the owner reaped the benefit by the ship's coming home safe." But in the latter case, in which it was stipulated in the memorandum of charter party that the master was to be supplied with cash by the shipper for the ship's use during the voyage, it was held that such advance was a mere loan on account of freight, and that the hirer of the vessel had no insurable interest in the money so advanced, because in the event of the loss of the vessel he could claim reimbursement from the owner. In the more recent case of *Jackson* v. *Isaacs,* 3 Hurlst. & Norm. 405, it was held that the ship-owner had a right to recover the amount stipulated to be paid in advance for

freight, notwithstanding the loss of the ship before the completion of the contemplated voyage, because in the charter party it was agreed that the advance of freight was to be subject to an allowance in favor of the shipper for the cost of insuring the freight, thereby clearly indicating the intention and understanding of the parties that the freight was to be at the risk of the shipper, and not to be reimbursed to him in case of loss, because in such case he would have no insurable interest in the freight. A similar decision, and on the same ground, was made in *Hicks v. Shield*, 7 El. & Bl. 633.

On carefully examining the charter party in the present case, we are unable to find any stipulation which brings it within the class of decisions last above cited, and others of a similar character. There is nothing to indicate an intention of the parties that the money advanced to the master to pay the ship's disbursements should be deemed an absolute payment of so much freight actually earned, which was no longer contingent on the performance of the charter party and the completion of the voyage. The contract of affreightment is an entire and indivisible one for the whole voyage from Boston to ports in the Mediterranean and back again to the United States, for which a single sum of money, adding thereto the cost of foreign port charges and pilotages, is to be paid, and it is expressly stipulated that it is to be 'paid "on discharge of cargo at port in the United States" No language could more clearly indicate an intent to make the earning of the whole freight dependent on the fulfilment of the contract by the entire completion of the stipulated voyage Nor can we think this intent is in any degree affected or controlled by the insertion of the clause concerning the advance to be made to the master abroad. The design of this stipulation is manifest. It was to enable the master to obtain funds in foreign ports, where the owner of the vessel would not be likely to have any agents or correspondents, through the agency of the charterer, who could by his consignees in the ports to which the vessel was bound readily furnish the needful supply. But it was not intended to sever the entirety of the contract by making an absolute payment on account of the freight.

This would be contrary to the express stipulation already cited, that the freight was to be paid on the discharge of the cargo in the United States. The sum advanced was nothing more than a loan to the owner, to be repaid on the arrival of the vessel after the completion of the voyage. There is nothing to indicate that the money so advanced should be a part of the freight. The stipulation that it was to be furnished at cost and free of commissions seems to us to be quite immaterial in its bearing on the question at issue. The stipulation did not alter the nature of the advance, but only limited the right of the charterer to charge expenses upon it, and thus to diminish the compensation which the owners were to receive for the hire of the vessel. It is to be observed in this connection that there is no restriction on the right of the charterers to charge interest on the advance, which was one of the features relied upon in *De Silvale* v. *Kendall*, as indicating that it was not intended as a loan. No case has been cited, and none, we think, can be found, where a stipulation like the one under consideration has been held to be an absolute payment of freight under a charter party, so that it was no longer contingent on the performance of the voyage. The most favorable view which can be taken of this clause in behalf of the defendants is, that the intent of the parties is left doubtful, in which case, as has been already said, the general rule of law must prevail.

The result is, that the plaintiff at the time of the loss had an insurable interest in the whole amount of the freight, and that no deduction is to be made, on account of the advance to the master, from the sum insured by the policy.

*Judgment for the plaintiff.*